# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR SANCHEZ, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1736 |
| | § | |
| PROPERTY AND CASUALTY, | § | |
| INSURANCE COMPANY OF | § | |
| HARTFORD and IRENE BERNARDO, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this insurance dispute is Defendant Property and Casualty Insurance Company of Hartford's ("Hartford") Motion to Abate and to Compel Appraisal [Doc. # 23] ("Motion"). Plaintiff Hector Sanchez ("Sanchez") responded [Doc. # 28] and Hartford replied [Doc. # 39]. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **denied.**

## I.    FACTUAL BACKGROUND

Plaintiff Hector Sanchez's home, which was insured by Defendant Property and Casualty Insurance Company of Hartford, was damaged when Hurricane Ike struck Harris County, Texas, on September 12, 2008. Approximately six weeks later, on October 26, 2008, Sanchez reported a claim to Hartford under his homeowners insurance policy. Sanchez reported that wind damaged the back door and a pipe stack

on the roof.  He also reported that wind caused cracking to bricks on the outside of the home, and damage to sheetrock on the interior walls of the home.  The next day, October 27, 2008, Irene Bernardo, a Hartford claims adjuster, spoke with Sanchez and scheduled a time to complete an inspection of the home.  On October 29, 2008, Bernardo inspected the home.  Hartford states that, based upon her inspection, Bernardo determined that the damage to the back door was caused by wind from Hurricane Ike, a covered occurrence under Sanchez's policy, and estimated the damage at $150.  However, Bernardo concluded that the cracks to the exterior bricks and interior walls were not caused by wind generated by Hurricane Ike.  She also concluded that the damage to the pipe stack was ordinary "wear and tear" deterioration, not the hurricane.  Bernardo accordingly concluded the covered damage to the home was $150, an amount below Sanchez's deductible of $5,850.

In a letter dated October 29, 2008, which Hartford states was mailed on October 31, 2008, Bernardo informed Sanchez that Hartford declined to make any payment on his claim.  The letter stated:

> We have reviewed and evaluated your claim.  After considering the amount of damages presented and a review of your policy deductible of $5,850[,] I must respectfully decline any payment to you.

> If you have any additional information that should be considered in
> evaluating your damages, please contact me at the number listed below.[1]

Attached to the letter denying payment was Bernardo's itemized repair estimate. The estimate did not reference damage to the exterior or interior walls, or the pipe stack on the roof.

Sanchez states that upon receiving the letter and estimate, he called Bernardo to complain about the adjustment.[2] The evidence of record does not indicate when precisely Sanchez made this call. However, Hartford does not dispute Sanchez's statement that he called Bernardo upon receiving the denial letter that was mailed on October 31, 2008. Accordingly, the Court will assume for purposes of this Motion that the call was made on November 1, 2008.[3] Sanchez describes the call in his affidavit as follows:

> I called Ms. Bernardo to complain about her adjustment. I told Ms.
> Bernardo that I did not agree with her adjustment and that I was not
> satisfied with her adjustment. I further stated that she must have
> forgotten to include the damages to the structure like cracks in the brick
> and walls. She said she did not forget, but instead had excluded those
> items from her estimate because they were not caused by Hurricane Ike.
> She believed the damages to the brick and walls were caused from wear
> and tear or lack of maintenance. I told her that my home had been in
> good shape before Hurricane Ike and did not have any of these damages.

---

[1]     Exh. A-1 to Plaintiff's Response [Doc. # 28-2].

[2]     Affidavit of Hector Sanchez, Exh. A to Plaintiff's Response [Doc. # 28-1], at 2.

[3]     This date is undisputed and has been gleaned from documents submitted by Hartford in connection with its request for a ruling on a protective order.

Ms. Bernardo said she was sorry and there was nothing further she could do.[4]

Sanchez did not submit any additional information or proof from other sources. Sanchez states that he was so angered by Hartford's denial of his claim that he called the company the same day and cancelled his policy.  Sanchez states that when asked why he was cancelling, he told the representative that he was "angry with Hartford's handling of my Hurricane Ike claim and that Hartford had unfairly denied my claim."[5]

Nothing pertaining to this dispute happened for six months after Sanchez's call to Bernardo to complain about her adjustment of his claim.  He filed the instant suit in Harris County court on April 29, 2009.  Other than Sanchez's call to Hartford to cancel his policy out of dissatisfaction with the company's handling of his claim, the record does not show any further communication between Hartford and Sanchez during this time.  Neither party made or any effort to further investigate, document, or settle the matter.

Hartford was served with the summons and petition in this suit on May 12, 2009.

---

[4]     *Id.*  Hartford does not submit evidence to refute, or raise an issue of, Sanchez's description of these facts.

[5]     *Id.*

Section 541.154 of the Texas Insurance Code provides that a person seeking damages under that Code "must provide written notice to the other person not later than the 61st before the date the action is filed." TEX. INS. CODE § 541.154. However, rather than providing notice of this suit in advance as required by the statute, Sanchez provided notice to Hartford contemporaneously with filing the suit. Hartford states that it was served with Sanchez's notice letter on May 12, 2009. Sanchez's notice letter was not specific with regard to the basis of the economic damages he claimed in excess of $700,000. Sanchez's counsel admitted in Court that the demand was merely the policy limits trebled.

Hartford removed the case to this Court on June 5, 2009, and, after being granted an extension of time, filed an answer on June 29, 2009. Approximately two months after removal, on August 3, 2009, Hartford filed an unopposed motion to abate due to the deficiency of the notice letter. Hartford also sought abatement of the suit under Texas Insurance Code § 541.161(a) in order to pursue mediation of Sanchez's claim. The Court granted the motion on August 4, 2009. The parties unsuccessfully mediated the case on September 9, 2009, and upon notice from the parties of the unsuccessful mediation, the Court reinstated the case to the active docket on September 17, 2009.

Approximately one month later, on October 15, 2009, Hartford sent Sanchez correspondence seeking to invoke the appraisal clause in the insurance policy.  That clause provides:

> E.    Appraisal.
>
> If you and we do not agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to use, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their difference to the umpire.  A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> 1.    Pay its own appraiser; and
>
> 2.    Bear the other expenses of the appraisal and umpire equally.[6]

After Sanchez objected to appraisal, Hartford filed this motion to abate and compel appraisal pursuant to the insurance contract.  Sanchez argues Hartford waived appraisal by unconditionally denying liability and also by failing to timely request it.  Sanchez also argues that by denying coverage for damage other than the back door,

---

[6]    Hartford Homeowners Insurance Policy, Exh. C to Property and Casualty Insurance Company of Hartford's Reply to Plaintiff's Response to Motion to Abate and to Compel Appraisal [Doc. # 39-3], at 67 of 82.

Hartford committed an anticipatory breach of the insurance contract, thus relieving Sanchez of any contractual obligation to participate in appraisal. Finally, Sanchez argues that appraisal is not appropriate here because this is a dispute over coverage, not the amount of damages.

At a December 8, 2009 hearing on a discovery dispute in this case, the Court denied the pending Motion to the extent Hartford seeks a further abatement of this case. As discussed on the record at that hearing, this case has been on file since June 2009, Hartford was given an extension of its time to respond to the petition, and this suit has already been formally abated at Hartford's request for six weeks from August 4, 2009 to September 17, 2009, during which time the parties participated in mediation. Hartford clearly has had notice of Sanchez's causes of action, and the relief he seeks, for ample time. The purposes of the abatement requirement have been fully satisfied. Accordingly, only Hartford's request that the Court compel the parties to participate in an appraisal remains in dispute for purposes of the instant Motion.

## II.   ANALYSIS

### A.   Appraisal Obligations

"An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.'" *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009) (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex.

2002)); *see also Lundstrom v. United Servs. Auto. Ass'n-CIC,* 192 S.W.3d 78, 87 (Tex.App.—Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). Though the line between the two is not always clear, the scope of appraisal is limited to questions of damages, not liability. *Johnson*, 290 S.W.3d at 889-90.

The Texas Supreme Court recently enunciated a strong policy in favor of enforcing appraisal clauses in insurance contracts regardless of concerns that may exist about the scope of appraisal. *See id.* at 888-89, 895. The court noted that virtually all homeowners insurance policies contain appraisal clauses as a method for resolving disputes about the "amount of loss" for a covered claim, and stated that, like other contractual provisions, appraisal clauses should be enforced. *Id.* "Unless the 'amount of loss' will never be needed," the court stated, "appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

### B.   <u>Waiver</u>

Sanchez does not dispute that his insurance policy contains a valid appraisal clause, but argues that Hartford waived the right to invoke it. Waiver is an affirmative defense that can be successfully maintained against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with

asserting that right.  *In re Acadia*, 279 S.W.3d 777, 779 (Tex.App.—Amarillo 2007, orig. proceeding) (citing *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)); *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex.App.—El Paso 2005, orig. proceeding).  The key inquiry is the question of intent to waive the right. *Id.* (citing *Rodriguez v. Classical Custom Homes, Inc.*, 176 S.W.3d 928, 932 (Tex.App.—Dallas 2005, no pet.)).  "Silence or inaction, for so long a period as to show an intention to yield the known right," is sufficient to prove waiver.  *Tenneco*, 925 S.W.2d at 643.  The party asserting waiver of an appraisal clause has the burden of proof.  *In re State Farm Lloyds,* 170 S.W.3d at 634; *Laas v. State Farm Mut. Auto. Ins. Co.*, 2000 WL 1125287, at *7 (Tex.App.—Houston [14th Dist.] Aug. 10, 2000, pet denied) (citing *Emscor Mfg., Inc. v. Alliance Ins. Group.* 879 S.W.2d 894, 917 (Tex.App.—Houston [14th Dist.] 1994, writ denied)).

Waiver is ordinarily a question of fact, but where the facts are admitted or clearly established, it becomes a question of law. *Tenneco*, 925 S.W.2d at 643.  "The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation."  *Laas*, 2000 WL 1125287 at *6 (citing *Terra Industries, Inc. v. Commonwealth Ins. Co. of America*, 951 F.Supp. 581, 602. (N.D. Iowa 1997)).

The Texas Supreme Court explained over a hundred years ago, in a case involving an insurer's alleged waiver of the right to invoke an appraisal clause in an insurance contract,

> the acts relied on as constituting waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss and regulating the appraisement of the damage done is not desired, and that it would be of no effect if observed by him.

*Scottish Union v. Clancy*, 18 S.W. 439, 441 (Tex. 1892).

Waiver can be established by the conduct of an insurer, including "(a) Parol waiver; (b) refusal to arbitrate: (c) denial of liability; (d) failure to demand arbitration or appraisal; (e) acts inconsistent with intention to arbitrate; (f) appointment of prejudiced appraiser; (g) improper conduct during appraisement." *American Century Insurance Co. v. Terry*, 26 S.W.2d 162, 166 (Tex. 1930).

## 1.    Waiver by unconditional denial of liability

Sanchez first argues that Hartford waived the appraisal clause by unconditionally denying liability on his claim.  However, the record shows that Hartford did not unconditionally deny liability.  Hartford accepted coverage for repairs to the back door costing $150.  Hartford declined any payment to Sanchez because the amount of damage it found to have been caused by hurricane winds, a covered occurrence, was below Sanchez's deductible of $5,850.  Thus the authorities cited by Sanchez for the proposition that an insurer's unconditional denial of liability

waives the right to invoke appraisal are inapplicable here.  This is a dispute over the amount of damages.

### 2.    <u>Waiver by untimely demand</u>

The Court turns to the issue of waiver by untimely demand for appraisal.  The Court concludes that Hartford waived its right to invoke the clause.  The appraisal clause contains no provision on the time in which an appraisal must be invoked. When a policy is silent as to time, the law will require that the demand for appraisal be made within a reasonable amount of time.  *Laas*, 2000 WL 1125287 at *6 (citing *Lion Fire Ins. Co. v. Heath,* 68 S.W. 305, 306 (Tex.Civ.App. 1902, no writ)).  "An insurance company cannot merely wait its own time to make a demand for appraisal, but must make it 'in a seasonable and reasonable time.'"  *Id.* (quoting *Boston Insurance Co. v. Kirby*, 281 S.W. 275, 276 (Tex.Civ.App.—Eastland 1926, no writ)); *cf. Gulf Ins. Co. v. Carroll*, 330 S.W.2d 227, 232 (Tex.Civ.App.—Waco 1959, no writ) (upholding a jury's finding that delay of four months and one day was unreasonable).  The proper point of reference for determining whether an insurer waived the right to invoke appraisal by delay is the point at which the insurer knew the appraisal clause could be invoked because of a disagreement over the amount of damages, that is, the point of impasse with the insured.  *Laas*, 2000 WL 1125287 at *6 (citing *Terra Industries*, 951 F.Supp. at 603); *see also Dwyer v. Fidelity Nat. Property and Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009) (construing a National

Flood Insurance Program policy and stating that "the appropriate waiver inquiry examines [the insurer's] knowledge and action–when [the insurer] knew that the appraisal clause could be invoked, whether it reacted timely to the knowledge.").

In the case at bar, Sanchez first informed Hartford of his claim for damages to his house from Hurricane Ike by telephone on October 26, 2008, approximately six weeks after the storm.  Following several phone calls with Sanchez, and an inspection of the house, Bernardo mailed a letter to Sanchez on October 31, 2008, denying any payment because the policy deductible exceeded the only covered damage, $150 for harm to the back door.  Upon receiving the letter, on November 1, 2008, Sanchez called Bernardo to dispute her repair estimate.  During this phone call, Bernardo informed Sanchez that she determined that the only damage to the house caused by wind from the hurricane was to the back door.  Sanchez objected, and stated that his house had been in good shape prior to Ike.  Sanchez states, and Hartford does not dispute, that Bernardo informed him that she was sorry, but that there was "nothing further she could do."  It is clear that, at this point, Hartford's analysis of damages was concluded and its final position was that the amount of covered damages was $150. Sanchez, at this time, on the other hand, expressed his directly contrary view that all of the damage he originally reported was due to the hurricane.  The parties' diametrically opposed positions on the amount of damages suffered from the Hurricane, clearly articulated in this phone call, establish that an impasse had been

12

reached.[7]  At this time, Hartford was on notice that it had the right to invoke the appraisal clause.  November 1 is the date from which measurement must be made to determine whether Hartford waived appraisal by failing to timely invoke its right.

As noted, there is no indication of further direct communication between the parties about Sanchez's claim after his November 1 phone call to Bernardo and cancellation of his policy.  During the nearly six months prior to Sanchez filing this suit, Hartford made neither inquiry, further investigation about damages, attempt to settle the dispute, nor any request for appraisal.  On August 3, 2009, twelve weeks after Sanchez served his lawsuit and the Texas Insurance Code notice letter on May 12, 2009, and nine weeks after Hartford had removed the case to federal court on June 5, 2009, Hartford filed an unopposed motion to abate so that the parties could mediate their dispute.  Hartford still did not request an appraisal.  An unsuccessful mediation took place on September 8, 2009.  The Court reactivated the case on September 17, 2009.  One month thereafter, on October 15, 2009, Hartford finally requested that Sanchez participate in an appraisal.[8]

---

[7]     Indeed, this conclusion, that an impasse existed, is reinforced by Sanchez's explanation in his call that same day cancelling the policy.  He explained his reason was "Hartford had unfairly denied [his] claim."

[8]     Hartford sent Plaintiff's counsel a request by letter dated October 15, 2009.  Exh. B to Property and Casualty Insurance Company of Hartford's Motion to Abate and to Compel Appraisal [Doc. # 24-1].

To decide if a waiver of the right to an appraisal has occurred, this Court must defer to Texas appellate authority. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court concludes that Texas courts would hold that Hartford waived its right to an appraisal under the circumstances at bar. In *Gulf Ins. Co. v. Carroll*, the Waco Court of Appeals upheld a jury's finding that the insurer ("Gulf") had waived appraisal by waiting four months and a day from the time of the insured's claim to request it. 330 S.W.2d at 230-231. The record showed that the insureds filed a claim for hail damage on April 21, 1958. *Id.* at 230. Gulf's adjuster inspected the house shortly thereafter, but determined that no payment was necessary, telling one of the insureds that he "has no claim." *Id.* at 229-30. More than four months later, Gulf contacted the insureds and demanded an appraisal. *Id.* at 231. The insureds responded by remarking that Gulf must have changed its position since its earlier position was that the claim was not covered but that, in any event, Gulf had waived its right to appraisal through its "inattention to the claim and [its] very obvious lack of effort to make a bona fide effort to settle the claim." *Id.* The insureds also informed Gulf that they believed it was "not entitled to make this demand by reason of the passage of time since the claim was first presented to you and your adjuster made his investigation." *Id.* Nevertheless, the insureds agreed, subject to their waiver contention, to submit to an appraisal. *Id.* Gulf responded that it had not denied liability, but rather had determined that the amount of covered damages was exceeded

by the deductible.  *Id.*  Nevertheless, the appraisal never took place, apparently because Gulf failed to initiate it.  *Id.*  In view of these undisputed facts, the Waco court upheld the jury's finding that the insurer's waiting four months and a day from the time the claim was submitted was unreasonable and caused a waiver of the insurer's right to demand appraisal.  *Id.* at 231-32.[9]

The Eastland Court of Appeals reached a similar result in *Boston Insurance Co. v. Kirby*, 281 S.W. 275, 276 (Tex.App.—Eastland 1926, no writ).  In *Kirby*, the insurer ("Boston Insurance") appealed a district court's judgment in favor of the insured on the grounds that the insurance policy contained an appraisal clause and also a clause mandating that suit could not be maintained in any court until after compliance with the appraisal.  *Id.*  The fire to the insured's property occurred on January 23, 1924.  *Id.*  On February 12, 1924, the insured filed his proof of loss.  *Id.*

A few days after February 24, 1924, Boston Insurance's adjusters met with the insured and discussed the loss.  *Id.*  No agreement was reached, and negotiations continued until April 12, 1924, when the adjusters made written demand by letter for

---

[9]      While the *Gulf* and *Boston Insurance* decisions affirmed jury verdicts, these appellate rulings are probative in the legal analysis required here.  There is no factual issue about the chronology presented.  The extent of the delay far exceeds that in the cited decisions.  Recent authorities clarify that a court may rule on the existence of waiver as a legal matter early in the case when there is no factual dispute about the events.  *See Laas*, 2000 WL 1125287 at *6 (citing *Terra Industries, Inc. v. Commonwealth Ins. Co. of America*, 951 F.Supp. 581, 602. (N.D. Iowa 1997)).

appraisal.  *Id.*  The insured declined the appraisal and filed suit on April 29, 1925.  *Id.*
The jury found that appraisal demand was not made within a reasonable time.  *Id.*  The
court noted that Boston Insurance waited 58 days on one policy and 59 days on a
second policy, after receiving proof of loss before demanding appraisal, and adopted
the jury's finding.  *Id.*  The court stated: "It being a question of fact to what would
constitute a reasonable time, and the jury having found against appellee on that issue,
it cannot be said that appellants were within their contractual rights at the time their
demand was made."  *Id.*

In a similar vein, in *Manchester Fire Ins. Co. v. Simmons*, 35 S.W. 722, 723
(Tex.Civ.App.—Dallas 1896, writ ref'd ), the Dallas Court of Appeals rejected an
insurer's argument that a district court judgment in favor of the insured should have
been overturned because the insured never submitted to an appraisal as contractually
required.  There was evidence that the insured had repeatedly sought to settle the
claim, but that the insurer reacted with indifference, evincing a disinclination to
ascertain damages or to invoke the right of appraisal.  *Id.*  The court stated:

> The company has not sought the benefit of [the insured's obligation to
> submit to appraisal].  It has refrained from such investigation as might
> have led to an agreement, and by this course has also prevented the
> occurrence of the contingency in which appraisers are provided for by
> the contract.  **It certainly should not be permitted to sit back and take
> no action until suit is brought to enforce its liability, and then
> successfully urge as a defense that the amount of the loss has not
> been agreed upon or fixed by appraisers.**  It is a provision in the
> contract inserted for the company's benefit, and it should have at least

> shown a willingness to go into the matter of the ascertainment of the
> amount of the loss in the manner provided, before complaining that it has
> not been so ascertained.

*Id.* (emphasis added).

Hartford argues that it did not waive its right of appraisal because it was attempting to adjust and settle a claim. Hartford cites principally to *Scottish Union* for the proposition that an insurer's attempts to adjust and settle a claim do not waive the right to an appraisal. *See Scottish Union v. Clancy*, 18 S.W. 439, 441 (Tex. 1892). In *Scottish Union*, the insured filed suit against the insurer approximately two and a half months after a fire destroyed his property. *Id.* at 439. The insurer answered by asserting that the insured had failed to comply with its demand for an appraisal as required by the insurance contract. *Id.* The insured argued that the insurer had waived the appraisal by partially adjusting the claim. *Id.* The Texas Supreme Court noted that the insurer properly demanded appraisal, insisted on a proof of loss, and was endeavoring to ascertain the amount of damages, while it was the insured that declined to comply with the conditions in the policy. *Id.* at 441. Accordingly, the court held that the insurer had not waived appraisal and reversed a jury verdict in favor of the insured. *Id.*

The holding of *Scottish Union* does not assist Hartford here. While Hartford is correct that an insurer's attempts to adjust and settle a claim do not waive the insurer's right to an appraisal, the uncontroverted facts of record establish that the

delay was not based on Hartford's attempts to adjust or settle Sanchez's claim. Hartford waived an appraisal by failing to invoke the right for almost an entire year after Sanchez filed his claim and Hartford completed its investigation and adjusting process, and declined payment. Hartford has produced no evidence that its delay in requesting an appraisal was due to a good faith attempt to ascertain the amount of damages.

Hartford also argues that its delay in seeking appraisal after suit was filed was due to its good faith attempt to mediate the case. This argument is unavailing. First, Hartford fails to explain the absence of a request for an appraisal, or any effort to investigate, mediate, or settle Sanchez's claim, during the nearly six months that elapsed between Bernardo's phone conversation with Sanchez, the point of disagreement between the parties, and the filing of this suit. Moreover, while the Court agrees that the time spent by agreement of the parties arranging for mediation and actually mediating this dispute does not count towards the delay giving rise to waiver, Hartford waited almost three months before requesting mediation after Sanchez filed suit, and then waited another five weeks before asking for an appraisal after mediation was completed.

Hartford also points to Sanchez's failure to send a proper notice letter in advance of this suit pursuant to the Texas Insurance Code § 541.154. As noted, Sanchez's notice letter was both late and lacking in detail on the specifics of his

18

claims and damages incurred.  However, the cited statutory provision pertains to notice of suit under state law; the provision is unrelated to waiver of a contract term, such as an appraisal clause.  Regardless of any deficiencies in his notice letter, Hartford was aware, from the time of Sanchez's phone call to Bernardo and his comment when he cancelled the policy, that there was a fundamental and intractable disagreement about the amount of damages.  From that point onward, Hartford knew it had the right to invoke appraisal.  Waiver is measured from the time that the right to invoke appraisal arose—the time of disagreement or impasse— not the time notice of suit or a Texas Insurance Code claim is received.  *See Laas*, 2000 WL 1125287 at *6 (citing *Terra Industries*, 951 F.Supp. at 603); *Dwyer,* 565 F.3d at 288.

In sum, Hartford's right to an appraisal arose on November 1, 2008, the date of Sanchez's phone call disputing Bernardo's adjustment and Hartford's unequivocal denial of payment on his claim.  At that time, the insurer was on notice that there was an impasse over the amount of damages.  Hartford did not invoke the appraisal clause until October 15, 2009.  Even discounting the six-week period that the parties spent attempting to mediate the dispute, the undisputed evidence of record shows that Hartford waited a total of more than ten months after the right to invoke appraisal arose to make the request.  Hartford has submitted no evidence to show that its conduct could be interpreted as anything other than an intentional relinquishment of its known right to invoke a contractual dispute resolution provision.  *See In re Acadia*,

279 S.W.3d at 779 (citing *Tenneco,* 925 S.W.2d at 643). On these facts, the Court holds that Hartford's delay in invoking the appraisal clause establishes waiver as a matter of law.[10]

---

[10]    Having determined that Hartford waived its right to invoke the appraisal clause by delay, the Court does not reach Sanchez's contention that Hartford committed an anticipatory breach of the insurance contract thus relieving Sanchez of any obligation to submit to appraisal. However, the Court notes that Sanchez cites to no authority for the proposition that an insured's *allegation* that an insurer breached the insurance contract relieves the insured of its obligation to participate in appraisal under the insurance contract. Indeed, if insureds could escape appraisal by merely alleging an anticipatory breach (or repudiation) whenever there is a dispute over coverage or claims handling, appraisal clauses would be virtually a nullity. Such a result is in direct contravention of the strong public policy in favor of enforcing such clauses. *See Johnson*, 290 S.W.3d at 893 (stating that a construction that would render appraisal clauses largely inoperative must be avoided); *see also In re State Farm Lloyds*, 170 S.W.3d at 634 (stating that an insurer's alleged failure to comply with policy provisions other than the appraisal clause does not waive its right to an appraisal unless there is evidence of intent to waive that right).

Sanchez's also argues that appraisal is inappropriate here because this is a dispute over coverage, rather than the amount of damages. The Court does not reach this contention. It is noted, however, that Sanchez's argument may well be about the scope of appraisal. The *Johnson* court stated in no uncertain terms that pre-appraisal litigation about the scope of appraisal is generally not permitted. *See Johnson*, 290 S.W.3d at 894 ("Litigating the scope of appraisal is wasteful and unnecessary if the appraisal itself can settle [the] controversy.").

Sanchez includes in his Response a request that the Court award costs for responding to Hartford's Motion. *See* Plaintiff's Response to Property and Casualty Insurance Company of Hartford's Opposed Motion to Abate and to Compel Appraisal [Doc. # 28] ("Plaintiff's Response"), at 2. Sanchez cites no authority to support this request, and it is **denied.**

## IV.    **CONCLUSION**

For the forgoing reasons, Hartford's Motion to Abate and to Compel Appraisal

[Doc. # 23] is **DENIED.**  Costs sought by Sanchez [Doc. # 28], at 2, are **DENIED**.

SIGNED at Houston, Texas, this 27ᵗʰ day of **January, 2010.**

Nancy F. Atlas
United States District Judge